## Joseph W. Jenkins, Jr. & others *vs.* Joseph H. Newell & others.

The provision in *St.* 1842, *c.* 56, § 1, that a person " arrested on mesne process, or execu tion, for any debt, may give notice to the officer having him in custody, or, if he be then bailed, to the officer who made the arrest, that he is desirous to take the oath prescribed for poor debtors confined on execution," authorizes a debtor who is committed on execution, and gives bond for the liberty of the jail limits, to give such notice to the jailer.

Debt on a bond for the liberty of the jail limits. The case was submitted to the court on the following statement of facts :

Joseph H. Newell, one of the defendants, was arrested, May 10th 1843, upon an execution which issued on a judgment recovered against him by the plaintiffs, and was committed to the jail in Boston, by W. Freeman, a deputy sheriff. On the same day, said Newell, as principal, and the other defendants, as his sureties, gave the bond on which this action is brought, conditioned as the law in such cases requires. On the 21st of July 1843, said Newell, then on the jail limits by virtue of said bond, gave due notice to N. Coolidge, keeper of said jail, of his inability to pay the debt for which he

was committed, and of his desire to take the benefit of the law for the relief of poor debtors. Said Coolidge thereupon made known the same to a justice of the peace, who appointed the 28th day of said July, at 10 o'clock, A. M., and the office of said jailer, as the time and place for the examination of said Newell; and notice thereof was served by said Coolidge, on the 21st of said July, upon the plaintiffs' attorney of record. At the said time and place so appointed, the said Newell appeared and submitted himself to examination. The plaintiffs also appeared by their attorney, and (reserving all right of objection to said application of said Newell and the proceedings thereon, and protesting that the same were irregular) put in certain interrogatories *de bene esse.* Upon the examination, the justices before whom it was made were satisfied of the truth of the facts set forth in the oath prescribed by law to be taken by poor debtors, and that the said Newell was entitled to his discharge; and said oath was administered to him, and a certificate thereof was duly granted under their hands. The said Newell, relying upon the said discharge, did not surrender himself, at the expiration of ninety days from the day of his commitment, at the jail house, for the purpose of being committed to close confinement, nor did he make payment of the execution upon which he was arrested.

*M. S. Clarke,* for the plaintiffs.

*A. H. Fiske,* for the defendants.

HUBBARD, J. The only question presented for the consideration of the court is, whether the notice served upon the judgment creditors was in conformity to the requirements of *St.* 1842, *c.* 56, § 1. If the notice was given through an officer not authorized by the statute, it is then contended that such defect is fatal, and avoids the discharge; the certificate of the magistrates not being conclusive evidence of the regularity of the prior proceedings. *Little* v. *Hasey,* 12 Mass. 319. *Putnam* v. *Longley,* 11 Pick. 487. *Slasson* v. *Brown,* 20 Pick. 436.

The argument of the plaintiffs' counsel is, that the debtor,

after giving the bond, was no longer in the custody of the jailer; was not within the four walls of the prison, nor subject to his watch and control ; and that the jailer had no more authority to arrest him than any person accidentally within the prison limits, and consequently was not an officer having him in custody, within the meaning of the law, and therefore not legally capable of receiving the notice and communicating it to a justice ; a legal notice being necessary to sustain the subsequent proceedings. 11 Pick. *ubi sup.*

The *St.* of 1842, *c.* 56, (now repealed,) was remedial, and was intended to provide for all cases of debtors arrested on mesne process, or on execution, who were desirous of taking the oath prescribed for poor debtors ; directing the manner of giving notice to the creditors, and also imposing it as a duty upon the officer, at the time of making the arrest, to inform the debtor of his right to take the oath, after giving the requisite notice. The first section of the statute embraced, in the same paragraph, the several cases of a debtor arrested on mesne process, and one taken on execution; and he was authorized to "give verbal or written notice to the officer having him in custody, or if he be then bailed, then to the officer making the arrest." In the case at bar, the judgment debtor was taken on execution, and after his commitment, he gave a bond for the liberty of the prison limits ; which bond is now in suit. The notice, which he gave, of his intention to take the poor debtors' oath, was to the jailer, and not to the officer who committed him.

We are of opinion that the notice was given to the proper officer. The statute did not mean to leave cases unprovided for, and to hold persons in confinement for want of a proper officer, by whom a notice of the intention to take the oath might be legally served.

The officer who made the commitment had no longer any authority over the debtor; he had no right to retake him, or to hold him in custody, at the request of another. He had fully discharged his duty, and his official responsibility had terminated.

26 *

Mussey *v.* Eagle Bank.

The jailer was the officer to whose custody he was committed, and by whom he was held in close confinement till he was admitted to the liberty of the prison limits by force of his bond. The debtor continued a prisoner, within the meaning of the statute ; and while the bond relieved him from the inclosure of the prison walls, it did not permit his going beyond the prison limits with impunity ; and though not subject to the strong hand of the jailer, for which the bond was the substitute, still it was to the jailer that he was, by law and by the condition of his bond, to surrender himself for the purpose of being committed to close confinement. Rev. Sts. *c.* 97, § 63. The jailer was, therefore, the officer having the debtor in custody, according to the intent and within the meaning of the statute ; and whose duty it was to serve the notice on the creditors, and to receive their debtor as a prisoner in case of his surrender ; and whose responsibility, as an officer, though in part suspended, was never terminated until the debtor was legally discharged.

*Plaintiffs nonsuit*